**Curtis B. DANNING, Trustee in Bankruptcy, Plaintiff-Appellant,**

v.

**DAYLIN, INC., Defendant-Appellee.**

**No. 71–2782.**

United States Court of Appeals, Ninth Circuit.

Nov. 1, 1973.

Rehearing Denied Dec. 7, 1973.

Stephen P. Feldman (argued), Jeffrey Chanin of Quittner, Stutman, Treiste & Glatt, Los Angeles, Cal., for plaintiff-appellant.

Leon Savitch (argued), of Buchalter, Nemer, Fields & Savitch, Los Angeles, Cal., for defendant-appellee.

Before HUFSTEDLER and WRIGHT, Circuit Judges, and RENFREW, District Judge.*

## OPINION

EUGENE A. WRIGHT, Circuit Judge:

Plaintiff Danning, trustee in bankruptcy of First Gibson Stores, appeals from a judgment of the district court which denied the trustee's attempt to set aside as "fraudulent and void" under California law [Cal.Commercial Code § 6101, et seq. (West 1964)] an alleged bulk transfer of the bankrupt's inventory to Daylin. The court had jurisdiction under Section 70(e)(3) of the

* Of the Northern District of California.

Bankruptcy Act [11 U.S.C. § 110(e) (3)]. We reverse and remand.

The bankrupt, First Gibson Stores of California, was incorporated in July 1966 for the purpose of establishing and operating department stores. It opened two stores late in 1966. It sold "hard goods" (drugs, sundries, housewares, etc.) and leased a portion of each store to concessionaires of "soft goods" (clothing, etc.). The stores were opened with an inventory of some $300,000 in goods that First Gibson had ordered from 1,500 suppliers. The first store was closed for lack of business in January 1967, and all merchandise was moved to the second store at Rowland Heights. In February 1967, First Gibson decided to divest itself of its retail business and operate instead as the lessor of a chain of discount stores. It took over two new stores and began to liquidate its retail inventory.

As part of its change in business methods, First Gibson and Daylin agreed to exchange certain assets. First Gibson agreed to deliver all inventory and fixtures located at the sundry department of its Rowland Heights store in exchange for the housewares and hardware inventory and fixtures owned by Daylin at the concessions Daylin leased at the two new stores. Following an inventory by an independent firm, First Gibson and Daylin agreed that Daylin would pay approximately $15,000 in cash to cover the difference in value between the two inventories. This was about April 20 or 21, 1967. Daylin gave no notice of the transaction to the creditors of First Gibson, which was adjudicated a bankrupt on August 1, 1967.

California's law on bulk transfers is a codification, with modifications, of Article 6 of the Uniform Commercial Code, which is designed to protect a merchant's unsecured creditors from his disposition of inventory outside the ordinary course of business. C. Williams, Introductory Comment, Division 6, 23B Cal.Commercial Code 734 (West 1964). While Article 6 is aimed primarily at preventing fraud on the part of the transferor and transferee (e. g., selling the inventory and absconding with the proceeds), it is also intended to protect against inadequacy of consideration, even where the transferor and transferee are innocent of any wrongdoing. J. White & R. Summers, Uniform Commercial Code 644 (1972).

Section 6102 of the California Commercial Code provides in pertinent part:

"§ 6102 (1) A "bulk transfer" is any *transfer in bulk* and *not in the ordinary course of the transferor's business of a substantial part of the materials*, supplies, merchandise, or other inventory (Section 9109) of an enterprise subject to this division.

. . .

(3) The enterprises subject to this division are all those whose *principal business* is that of a baker, cafe or restaurant owner, garage owner, cleaner and dyer, or *retail or wholesale merchant*." Cal.Commercial Code (West 1964). (Emphasis added.)

When a transaction falls within the scope of Section 6102, the transferee must give notice of the transaction to the transferor's creditors, giving them time to investigate the proposed transfer and to protest if necessary. §§ 6105 and 6107. Failure to give notice renders the bulk transfer "fraudulent and void" against the transferor's creditors. § 6105.

The issue that confronts us, therefore, is whether the court below was correct in finding that the transaction complained of did not fall within the purview of these provisions. We conclude that the district court was in error.

I.

THE "PRINCIPAL BUSINESS" OF FIRST GIBSON

■ The district court found that the principal business of First Gibson was that of a retail merchant until February 1967, at which time it became a lessor and operator of discount stores. The transaction in question was on April 20, 1967. The court concluded that "at the

times material to this action," First Gibson was not principally a retail merchant.

We find this conclusion to be incorrect as a matter of law. The district court's conclusion emasculates the policies underlying the bulk transfer statute by allowing First Gibson to acquire inventory as a merchant, change its principal business to that of lessor, and then dispose of its "merchant's inventory" in bulk without notice.

"While some bulk sales risk exists in [those businesses excluded from the scope of Article 6], they have in common the fact that unsecured credit is not commonly extended on the faith of a stock of merchandise." Official Comment 2, § 6102, Uniform Commercial Code (1962). In the present case, credit was presumably extended on the faith of First Gibson's stock. Since protection of creditors is the main concern of Article 6, First Gibson's subsequent change of business to that of a lessor should not affect its duty to notify creditors who extended credit while it was a retail merchant.

■ We have found only two cases that have considered situations analogous to this, and both support our analysis. They held that the mere fact that a merchant terminates his business or engages in other lines of employment does not free him from the requirements of a bulk sales statute as applied to the sale of stock of his former business. Davidson v. Heyman, 243 App.Div. 546, 275 N.Y.S. 870 (1934); Teich v. McAuley, 212 S.W. 979 (Tex.Civ.App.1919).

## II.

### WAS THERE A "TRANSFER" ?

■ Daylin contends that an *exchange* of assets, as occurred here, is not a "transfer" under Article 6. The purpose of a bulk transfer statute is to keep merchandise and inventory as a cushion available to satisfy the claims of creditors. Therefore, defendant argues, where there is merely a replacement of inventory and fixtures with another type of inventory and fixtures having equivalent value, there is no depletion of inventory, and existing creditors may not complain.

Article 6 requires, however, that creditors be allowed to police bulk sales, to make certain that the consideration paid in return is indeed equal in value to the inventory transferred. Daylin would have the transferor act as the "policeman" of his own sale.

The dangers of a bulk transfer—either fraud or mere inadequacy of consideration—can as easily occur with an exchange of assets as with a cash sale. When creditors have advance notice of a bulk sale, either for cash or assets, they can investigate before it is completed and then determine whether they should intervene. That the trustee in bankruptcy subsequently receives the exchanged assets, as he did here, is of small consolation to creditors if the assets are of less value or salability than those looked to by the creditors when they extended credit.

Additionally, while the term "transfer" is not expressly defined in the California Commercial Code, it is defined elsewhere in California law and the Bankruptcy Act to include an exchange. Cal.Civil Code § 1039 (West 1954); Bankruptcy Act § 1(30), 11 U.S.C. § 1(30) (1970). *See also* 42 Words and Phrases, p. 408 (1952, and 1973 Supp. at 68).

Defendant argues by analogy to a case excepting a purchase money mortgage from the scope of the bulk sales act. In re Mercury Engineering Co., 68 F.Supp. 376 (S.D.Cal.1946). The analogy is weak. A bulk sales act clearly should not apply to a purchase money mortgage, since in that situation the merchant is acquiring new assets that could not have been the basis for extending earlier credit. The California legislature recognized this by specifically excepting purchase money security interests from the scope of the act. Cal.Commercial Code § 6103(1)(a) (West 1964). In the present case, however, the assets

exchanged by First Gibson were assets upon which creditors might have extended credit.

## III.

### WAS A "SUBSTANTIAL PART" TRANSFERRED?

■ A very significant difference between California's bulk transfers law and the official version of the Uniform Commercial Code is that California defines a bulk transfer as the transfer of a "substantial part" of the assets, as opposed to a "major part." *Compare* Cal. Commercial Code § 6102(1) (West 1964) with Uniform Commercial Code § 6102(1) (1962 Official Text). The significance is that a "major part" has generally been interpreted to require a transfer of approximately one-half of the transferor's inventory. *See* J. Bohn and C. Williams, California Code Comment, 23B Cal.Commercial Code 739–40 (West 1964). Courts have interpreted a "substantial part," on the other hand to be as little as 5 percent of the value [Reed v. Anglo Scandinavian Corp., 298 F.Supp. 310 (E.D.Cal.1969)], 6.3 percent [Markwell & Co. v. Lynch, 114 F.2d 373 (9th Cir. 1940)], 15 percent [Jubas v. Sampsell, 185 F.2d 333 (9th Cir. 1950)], and 16 percent [Schainman v. Dean, 24 F.2d 475 (9th Cir. 1928)].

The merchandise inventory of First Gibson at the time of the transfer was approximately $500,000, of which $122,000 worth was transferred to Daylin. This amount, roughly 25 percent, was clearly a "substantial part" of First Gibson's inventory.

## IV.

### WAS THE TRANSFER "NOT IN THE ORDINARY COURSE OF THE TRANSFEROR'S BUSINESS"?

■ Having produced evidence that "swapping inventories" is a common practice in the retail business, Daylin contends that the transfer was in the "ordinary course of business," and beyond the purview of the bulk transfer law.

This contention has been soundly rejected. In Jubas v. Sampsell, 185 F.2d 333 (9th Cir. 1950), a shoe store sold a quantity of shoes at one dollar per pair to another dealer, then declared bankruptcy. The trustee successfully moved to set aside the transfer as fraudulent under California's bulk sales act, despite the transferee's claim that "unloading" unmarketable shoes in that manner was a normal business practice. We held that "the ordinary course of business" contemplated only the day to day operation of a store, and not transfers of a significant portion of the inventory, no matter how usual a practice the transfer may have been.

"The plain meaning of the statute is that when a storekeeper disposes of a substantial part of his stock in trade in bulk, and selling in bulk sales is not the usual and ordinary way in which he conducts his business from day to day, the sale falls within the statute." *Id.* at 334; Reed v. Anglo Scandinavian Corp., 298 F.Supp. 310 (E.D.Cal. 1969).

## V.

■ In summary, we find that the principal business of First Gibson was that of a retail merchant at times relevant to the transaction, that there was a transfer within the meaning of Section 6102, that First Gibson transferred a substantial part of its merchandise or inventory, and that this transfer was not in the ordinary course of the transferor's business.

The transaction therefore came within the statutory notice requirements of Section 6107 of the California Commercial Code. Daylin's failure to adhere to these requirements renders the transaction "fraudulent and void" against any creditor of First Gibson. § 6105.

Daylin now offers a subrogation defense. Since the district court neither reached nor decided this question, we remand on this issue alone. We refer

the district court to § 70(e) of the Bankruptcy Act [11 U.S.C. § 110(e)] and to Moore v. Bay, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133 (1931).

Reversed and remanded.

■ Appellee's petition for rehearing is denied. Appellee contends that evidence of good faith and the absence of fraudulent intent should be a defense in an action to set aside a bulk transfer for lack of notice in violation of § 6101–6111 of the California Commercial Code.

We disagree. Extending appellee's argument to its logical conclusion, the only ones who are bound to give statutory notice of a bulk transfer are those who are engaging in fraud. Others need not because they are acting in good faith and therefore have nothing to lose by failing to give notice. Such a result hardly promotes the policy underlying a bulk sales law that seeks to protect creditors by requiring that they be allowed to police bulk sales. Appellee would have us establish the transferor and transferee as the "policemen" of their own transaction. This would emasculate the very purpose of a bulk sales law.