In re VILLA ROEL, INC., Debtor.

Bryan S. ROSS, Trustee, Plaintiff,

v.

Najeh RODOLPHO,
Defendant/Third-Party
Plaintiff,

v.

Martha QUIROZ, et al.,
Third-Party Defendants.

Bankruptcy No. 84–00114.
Adv. No. 84–0175.

United States Bankruptcy Court,
District of Columbia.

Aug. 2, 1985.

See also, 57 B.R. 879.

Bryan S. Ross, Washington, D.C., for debtor/plaintiff.

Harry L. Ryon, Jr., Arlington, Va., for defendant/third-party plaintiff.

Kenneth L. Crosson, Fairfax, Va., for third-party defendants.

## OPINION

GEORGE FRANCIS BASON, Jr., Bankruptcy Judge.

The plaintiff trustee in bankruptcy brings this adversary proceeding to void the transfer of inventory and fixtures owned by the Debtor, Villa Roel, purportedly made in noncompliance with the District of Columbia's Bulk Transfer Statute. D.C.Code Ann. § 28:6–101 *et seq.* (1981). Upon consideration of the plaintiff's motion for summary judgment and opposition thereto, and this Court having found that no material facts are in genuine dispute[1] and that the Bulk Transfer Statute ("the Statute") was not complied with, and hence that plaintiff is entitled to judgment as a matter of law, this Court will grant judgment in favor of the Trustee.

On March 6, 1984, an involuntary petition in bankruptcy was filed, as to which an order for relief was entered on March 29, 1984. By a contract of sale dated December 9, 1983, all the inventory and fixtures located in the Debtor's shop at 1404 Wisconsin Avenue, N.W., Washington, D.C., were transferred to the defendant/third-party plaintiff, Najeh Rodolpho, for one hundred thousand dollars ($100,000.00).[2] In the contract of sale, the Debtor expressly warranted that there were "no creditors having any claims for any unpaid accounts of Seller upon any of the" items conveyed and that, should any exist, the defendant would be indemnified by the Debtor and be held harmless. Complaint, Exhibit 1 (contract of sale) (filed July 9, 1984). At the time of the sale, the Debtor had a second store located at 922 19th Street, N.W., Washington, D.C., which was operated until January or February 1984.

### I

As a threshold matter, this Court notes that the Trustee has standing to bring this avoidance proceeding pursuant to Title 11, United States Code, section 544(b). Section

---

1. The opposition filed by the defendant/third-party plaintiff, Rodolpho, fails to state any facts in dispute that are material to resolution of the Trustee's complaint. *See* Material Facts in Dispute (filed Nov. 23, 1984). Rather, the alleged disputed, material facts set forth therein relate to resolution of the ultimate assignment of liability between all defendants.

On the other hand, the third-party defendants' opposition alleges a fact in dispute regarding the dollar value of the assets transferred. Opposition to Motion for Summary Judgment (filed Feb. 22, 1985). That opposition, however, is unsupported by any affidavit or other proof, contrary to the requirements of Rule 56(e), and is contradicted by the sworn testimony of two of the third-party defendants, as discussed on p. 5 of this Opinion.

2. By Rodolpho's own estimate, the wholesale value of the inventory conveyed is $50,951.98 and the value of the fixtures is $25,870. Rodolpho Tr. at 13.

544(b) places the Trustee in the shoes of an unsecured creditor of the Debtor, and gives him standing to assert any right under applicable law that such a creditor might have for avoiding transfers made by the Debtor. *In re Curtina Int'l., Inc.*, 23 B.R. 969, 976 (Bankr.S.D.N.Y.1982). Here, the applicable law is the Uniform Commercial Code ("U.C.C."), as adopted in the District of Columbia. *See* D.C.Code Ann. § 28:1–101 *et seq.* (1981). And in this case there are in fact creditors whose claims antedated this transfer.

Moreover, under the District of Columbia's enactment of the U.C.C., a trustee in bankruptcy is expressly denominated a "creditor" against whom a transfer in violation of the Bulk Transfers Statute is "ineffective." *See* D.C.Code Ann. §§ 28:1–201(12), :6–104(1); *see also In re Rome Furniture Mart, Inc.*, 20 U.C.C.Rep.Serv. 1009, 1011 (N.D.Ga.1976).

## II

It was originally uncontroverted that the Statute applies to the subject transfer, and that the Statute had not been complied with. Rodolpho has acknowledged as much in paragraphs 5 and 7 of his Answer, which admitted, respectively, that the sale was not in the ordinary course of the Debtor's business and constituted a sale of a substantial part of the Debtor's business, and that no notice of the sale was sent to creditors of the Debtor. Answer ¶¶ 5 and 7 (filed August 31, 1984); *see* D.C.Code Ann. §§ 28:6–102 and 28:6–104.

The third-party defendants, principals of the Debtor and signatories to the contract of sale by which the subject transfer occurred, have since asserted in opposition to the Trustee's motion for summary judgment that the sale to Rodolpho is not subject to the Statute. They allege that, "although a significant portion of assets were sold, including all of the assets at one of two store locations, Villa Roel did not sell substantially all of its assets. The bulk of its assets were located at the corporation's 19th Street store." The contention of the third-party defendants is not well taken, for the reasons now to be discussed.

First, the quantitative value standard applied by the Statute is not, as the third-party defendants set forth, sale of *"substantially all* of [the Debtor's] assets." (Emphasis added). Rather, by the specific language of subsection 28:6–102(1), included within the Statute's scope are all those transfers that convey *"a major part* of the materials, supplies, merchandise or other inventory" of the transferor. (emphasis added). Here, as discussed below, there is no genuine doubt that, not simply *a* major part, but by far *the* major part of the Debtor's inventory, was sold in bulk.

The bare, unsupported contention now made by the third-party defendants, that the bulk of the Debtor's inventory was located at the 19th Street store, is conclusively rebutted by their own testimony given at a Rule 2004 examination and at a section 341 meeting. At a Rule 2004 examination Martha Quiroz, a third-party defendant and principal of the Debtor, testified that "most of all [of the Debtor's inventory,] ... was in Georgetown [i.e., the Wisconsin Avenue, N.W. store]. This store [i.e., the 922 19th Street, N.W. store] was very small." Quiroz Tr. at 44. She further testified that, based upon an inventory taken in December 1983 or January 1984, the wholesale value of the Debtor's assets located at the 19th Street store was approximately $6,000. Quiroz Tr. at 35. The Debtor had no other assets at the 19th Street store. Quiroz Tr. at 36.

Furthermore, the testimony of Maria Perez-Molina, also a third-party defendant and principal of the Debtor, was that the wholesale value of the 19th Street store assets at the time of the involuntary petition was $4,000. Perez-Molina Tr. at 30. These assets had been stored for a period of time prior to the filing of the bankruptcy petition. Sales at the 19th Street store during early 1984 were "very, very low." Perez-Molina Tr. at 19.

■ Rodolpho estimated that wholesale value of the inventory transferred to him was $50,931.98, and the value of the fix-

tures transferred was approximately \$25,870. Rodolpho Tr. at 13. Using these figures for purposes of comparison, the value of the Debtor's property transferred to Rodolpho from the Wisconsin Avenue Store greatly exceeds any contemporaneous wholesale value estimate of the assets located at the 19th Street store. It should also be noted that the amount of goods at the 19th Street store had been bolstered by three post-transfer shipments of goods, *see* Rodolpho Tr. at 12; yet, even in view of slow sales in early 1984, the wholesale value of the 19th Street store's assets was at most approximately \$6,000 at the time of filing. Therefore, based upon the record of the case, the Court finds that there is no genuine dispute as to the fact that the overwhelming majority of the Debtor's inventory had been located at the Wisconsin Avenue store and was transferred to Rodolpho, thus rendering the Statute applicable to the transfer.

### III

When a bulk transfer is made, major responsibility for complying with the Statute is placed upon the transferee. *Compare* D.C.Code Ann. § 28:6–104(1)(a) (transferee's responsibility to require transferor to furnish creditor list) *with* D.C.Code Ann. § 28:6–104(3) (transferor responsible only for accuracy and completeness of list); *e.g., Danning v. Daylin, Inc.,* 488 F.2d 185 (9th Cir.1973); *Darby v. Ewing's Home Furnishing,* 278 F.Supp. 917 (W.D.Okla.1967); *Curtina, supra.* The transferee is also responsible for giving notice of the transfer to the transferor's creditors. *See* D.C. Code Ann. § 28:6–105.

Rodolpho contends that, despite being the transferee, he was not required to send notice of the transfer to creditors of the Debtor, because he relied in good faith upon representations of the Debtor and its counsel that no creditors existed. This contention is fatally defective.

The policy behind the Statute is to discourage indebted merchants from selling their stock in trade for whatever it will bring, and then absconding with the proceeds before satisfying their creditors. *Curtina,* 23 B.R. at 978; *see also Danning,* 488 F.2d at 190. The Statute is intended for the protection of all creditors existing at the time of the transfer. Absent an attempt to comply with the provisions of the Statute, a transferee's good faith is no defense to a violation of the Statute. *Danning,* 488 F.2d at 190. Thus, in this case, the absence of fraud on the part of Rodolpho, and his undisputed good faith reliance upon the representations of the Debtor and the Debtor's counsel, are not sufficient to relieve him of liability for noncompliance with the Statute.

■ Case law and the Statute itself establish that a transferee's good faith reliance upon a transferor's *affidavit* that he has *no creditors* may be sufficient to remove the transferee's obligation to send out notice of the transfer. *Adrian Tabin Corp. v. Climax Boutique, Inc.,* 34 N.Y.2d 210, 356 N.Y.S.2d 606, 313 N.E.2d 66 (N.Y. 1974); *see also* D.C.Code Ann. § 28:6–104(2) (creditor list must be sworn to or affirmed). The transferee may then be relieved of his obligation to send out notice. D.C.Code Ann. § 28:6–104(3). But in this case the contract of sale executed between Rodolpho and the third-party defendants on behalf of the Debtor, which contains representations that no creditors of a certain kind existed, was not sworn to. *See* 3 Am.Jur.2d. *Affidavits* § 12 (1962) (formal requisites). Nor has Rodolpho pointed to any other document constituting a *sworn* representation that no creditors existed.

■ Finally, the record shows that the third-party defendants did not represent that the Debtor had no creditors at all, but rather that it had "no creditors having any claims for any unpaid accounts of Seller upon any of the stock and fixtures conveyed...." Complaint, Exhibit 1. The Statute requires that *all* creditors of the transferor be given notice of the proposed sale, not merely certain kinds of creditors. D.C.Code Ann. § 28:6–104. Rodolpho, therefore, could not reasonably rely upon the limited nature of the third-party defendants' contract representation as a basis

for believing that the Debtor had no creditors at all.

 Under the District of Columbia Code, a bulk transfer is "ineffective against any creditor of the transferor," unless sufficient notice of the transfer is given prior to the exchange of possession of the items transferred. D.C.Code Ann. § 28:6–105. Therefore, the transfer of the Debtor's inventory and fixtures located at the Wisconsin Avenue store to Rodolpho is a transfer voidable by the Trustee pursuant to Title 11 U.S.C. § 544 and the District of Columbia's Bulk Transfer Statute.

## IV

▪ Nowhere does the Bulk Transfer Statute mention the remedy for a violation of its provisions. Case law, however, establishes damages as an appropriate remedy where, as here, the items transferred have since been sold, disposed of, and converted. *Curtina*, 23 B.R. at 979; *Cornelius v. J & R Motor Supply Corp.*, 9 U.C.C. Rep.Serv. 709, 710–12 (Ky.1971). The amount of damages should equal the value of the items transferred on the date of the transfer, and that value is not reduced by any post-transfer expenditures that the transferee may have made. *Curtina*, 23 B.R. at 979; *In re Pritchard*, 8 B.R. 688, 692 (Bankr.C.D.Cal.1981). The price paid for the items transferred is generally used as the yardstick for determining fair value. *Curtina*, 23 B.R. at 979; *Pritchard*, 8 B.R. at 691; *Cornelius*, 9 U.C.C.Rep.Serv. at 713.

▪ In the instant case, $100,000.00 was paid by Rodolpho to the Debtor for the Debtor's inventory and fixtures. Moreover, Rodolpho admits that he has sold, disposed of, and also converted to his own use the property that he acquired from the Debtor. Answer ¶ 10. He does not dispute, for purposes of the summary judgment motion, that the fair market value of the items transferred was the price he paid —$100,000.00. For these reasons, the Trustee is entitled to recover from Rodolpho, as transferee, $100,000.00, representing the fair value of the Debtor's assets transferred.

## IV

▪ As a matter of equity, the transferee is normally entitled to a credit for those proceeds of sale traceable to funds held by the Trustee. *Curtina*, 23 B.R. at 980. This Debtor's estate, however, has no assets. Hence, Rodolpho must be held liable to the Trustee for the entire purchase price amount.

Finally, this Court notes that Rodolpho may well be entitled to recover over against the former principals of the Debtor who materially participated in the consummation of the transfer of the Debtor's assets to him. However, that issue is not at this time before the Court.

IT IS SO ORDERED.