## COASTAL OIL NEW ENGLAND, INC. *vs.* CITIZENS FUELS CORPORATION & others.[1]

No. 93-P-367.

Suffolk. March 14, 1994. - January 6, 1995.

Present: BROWN, SMITH, & LAURENCE, JJ.

*Uniform Commercial Code*, Bulk transfer. *Fraud. Practice, Civil*, Findings by judge.

Discussion of a creditor's remedy under the Uniform Commercial Code for a debtor's transfer of all its assets in violation of the notice provisions of the Bulk Transfers Act, G. L. c. 106, §§ 6-101 et seq. [29-32]

Where a debtor had transferred all its assets in violation of the notice provisions of the Bulk Transfers Act, G. L. c. 106, §§ 6-101 et seq., its creditor was entitled to disregard the transfer and hold the transferee liable for the creditor's pro rata share of the assets or, if the assets had been resold, dissipated or unidentifiably commingled, liable for the creditor's pro rata share of the fair market value of the assets. [32-33]

A civil action brought by a creditor under the Uniform Commercial Code for a debtor's transfer of all its assets in violation of the Bulk Transfers Act, G. L. c. 106, §§ 6-101 et seq., was remanded to the Superior Court for a determination of the creditor's pro rata share in the proceeds of the bulk transfer. [33-34]

Evidence at a trial brought by a creditor under the bulk transfer provisions of the Uniform Commercial Code amply supported the judge's findings that there was no fraud or intent to conceal a debtor's transfer of all its assets in violation of the applicable notice provisions of the Code, on the part of either the debtor or the transferee. [34-35]


CIVIL ACTION commenced in the Superior Court Department on February 28, 1990.

The case was heard by *Elizabeth B. Donovan*, J.

*F. Anthony Mooney* (*Theresa Kelly Banash* with him) for the plaintiff.

*Alan B. Almeida* for the defendants.

---

[1]Citizens Corporation (the parent corporation of Citizens Fuels Corporation); Beaver Coal and Oil Co., Inc.; Easton Oil; and Starr Oil. None of these additional parties figure in this appeal.

LAURENCE, J. A judge of the Superior Court correctly held that a debtor's transfer of all its assets without proper advance notice to creditors had violated the Bulk Transfers Act, G. L. c. 106, §§ 6-101 et seq. She ruled, however, that the violation did not give rise to a cause of action by a complaining creditor against the transferee. Her rationale was that the transferee had subsequently sold those assets to a bona fide purchaser. We disagree with that conclusion on the instant facts and, accordingly, reverse and remand.

We derive the pertinent facts from the judge's unchallenged findings and the parties' stipulation. The plaintiff, Coastal Oil New England, Inc. (Coastal), is a wholesale supplier of petroleum products. For thirteen years prior to August, 1989, Coastal had done business with Beaver Coal and Oil Co., Inc. (Beaver), a retail seller of home heating oil and related products. Beaver also sold and serviced air conditioning and heating systems. Coastal had always dealt with Beaver through Beaver's sole officer, director, and shareholder, Michael Viano. As a result of the long and satisfactory relationship, Coastal had provided Beaver with a $200,000 line of credit.

The origin of this litigation was Viano's August 1, 1989, sale of the assets and business of Beaver to Citizens Fuels Corporation (Citizens) for $1,105,393.71.[2] At the time of the sale, Beaver was indebted to Coastal for $222,945.45. The sale included Beaver's customer list, service parts and equipment, service supplies, trademarks and names, contracts, agreements and leases, automotive equipment and motor vehicles, and books and records. Beaver had sold off its heating oil inventory in the ordinary course of business prior to the sale, so no oil was transferred. Citizens did not assume any of the prior debts, obligations, or liabilities of Beaver. On December 14, 1990, Citizens resold the original Beaver assets to Supreme Fuel Co. (Supreme).

Sometime in the late winter or early spring of 1989, Coastal's credit manager, John Coughlin, had telephoned

---

[2]The record does not disclose the disposition of the sale proceeds.

Viano regarding Beaver's sizeable overdue account. During the conversation Viano had mentioned to Coughlin that he was contemplating selling Beaver. In late July, 1989, about one week prior to the sale, Coughlin again called to inquire about payment of Beaver's outstanding indebtedness to Coastal. He was informed by an unidentified Beaver employee that Beaver was going to be sold. The employee did not name the buyer or specify the date of the closing. Coughlin left a message for Viano to call him. Viano finally called, a week later on August 1, 1989, one-half hour prior to the closing. Although Viano then informed Coughlin of the imminent closing, it was too late for Coastal to take any reactive measures. On August 4, 1989, Coastal received a written notice of the transfer from Citizens, by facsimile, which was purportedly sent in compliance with the Bulk Transfers Act and required Coastal to file any claims by August 5, 1989. Coastal did so.

Following the transfer, Coastal received several checks drawn on Beaver's account in partial payment of Beaver's outstanding debt, which reduced the balance to $140,552.99. When further payment of that balance was not forthcoming, Coastal commenced suit against Beaver and Citizens (as well as others not relevant to this appeal) on February 28, 1990. Coastal asserted a right to recover because it had not received the advance notice of the sale of Beaver's assets to Citizens that the Bulk Transfers Act (the Act), codified in art. 6 of our Uniform Commercial Code, G. L. c. 106, required to be sent to creditors. A default judgment was entered against an assetless and judgment-proof Beaver.

Following a bench trial, the Superior Court judge ruled that Citizens had certainly violated the ten-day advance notice provisions of the Act, found in G. L. c. 106, §§ 6-105 & 106. Nonetheless, she held that Citizens was not liable to Coastal because it had subsequently transferred the Beaver assets to Supreme, a supposed purchaser for value and in good faith. The judge concluded that the Act as promulgated

in Massachusetts afforded no remedy to Coastal in such a situation.[3]

Coastal's appeal challenges as erroneous the judge's rulings that Coastal had no remedy against Citizens and that there was no fraud or intent to conceal the transfer on the part of Citizens or Beaver. Coastal also assigns error to the judge's denial of its posttrial motion to conform the pleadings to the evidence in order to add counts alleging a fraudulent conveyance and a violation of G. L. c. 93A.

1. *The Bulk Transfers Act.* The judge concluded that the sale of Beaver's entire business to Citizens on August 1, 1989, constituted a bulk transfer under G. L. c. 106, § 6-102. She also determined that the notice Citizens had sent Coastal three days after the sale, purportedly in compliance with the Act, violated G. L. c. 106, § 6-105. That section requires that creditors be given notice, either personally or by registered or certified mail, at least ten days prior to a sale qualifying as a bulk transfer. Neither of those rulings is challenged on appeal. The judge further found that there had been no waiver of the notice requirement by Coastal. Citizen's appellate argument that this finding was erroneous is unconvincing.

Despite the statutory commandment that noncompliance with the notice requirement shall render the transfer "ineffective against any creditor of the transferor," G. L. c. 106, § 6-105, as inserted by St. 1957, c. 765, § 1, the judge ultimately ruled that Citizens was not liable to Coastal. She

---

[3]The judge also decided, sua sponte, that Coastal could not recover in any event because it had failed to institute its suit within the Act's six-month statute of limitations. G. L. c. 106, § 6-110. A party is required to plead the affirmative defense of statute of limitations in its answer. Mass.R.Civ.P. 8(c), 365 Mass. 750 (1974). Citizens did not do so. Such an omission constitutes a waiver of that defense. See *Security Natl. Bank* v. *General Motors Corp.,* 345 Mass. 434, 440 (1963); *Leahy* v. *Local 1526, Am. Fedn. of State, County, and Mun. Employees,* 399 Mass. 341, 351 (1987). Contrast *National Med. Care, Inc.* v. *Zigelbaum,* 18 Mass. App. Ct. 570 (1984). Furthermore, it appears from the record that the parties, through an exchange of correspondence between their counsel in late January, 1990, agreed to an extension of the six-month limitation period to March 1, 1990, in order to facilitate settlement negotiations.

based this conclusion on her finding that, prior to the commencement of the litigation, Citizens had resold the Beaver assets to a good faith purchaser for value, Supreme, who took title to the assets free from any defects. See G. L. c. 106, § 6-109.[4] The judge reasoned that, because Massachusetts had not adopted an optional provision of the originally proposed Uniform Commercial Code, § 6-106, the Legislature must not have intended to expose transferees to liability in a case such as this one.[5] This result has the effect of sanctioning intentional noncompliance with the Bulk Transfers Act undeterred by the threat of any adverse consequences. Fortunately, the statute is susceptible of a more equitable application in the instant circumstances.

It is true that the only explicit remedial provision mentioned in art. 6 for failure to comply with the notice provision of § 6-105 is that, under § 6-104, the creditor may "disregard the transfer and levy on the goods as still belonging to the transferor." Comment 2 to Uniform Commercial Code § 6-104, 2C U.L.A. 72 (1991). See also Comment 3 to § 6-

---

[4]The judge's finding that Citizens had resold the assets to Supreme prior to this litigation was mistaken. Coastal filed suit on February 28, 1990. The sale took place on December 14, 1990, ten months subsequent to Coastal's initiation of suit. Moreover, at the time of the sale, Supreme was explicitly made aware' of that lawsuit in a schedule appended to the purchase and sale agreement. Supreme consequently had actual notice of Coastal's claims regarding Beaver's and Citizen's noncompliance with the Act and was not a good faith purchaser who took free of that defect. Compare G. L. c. 106, § 6-109, and § 1-201(25); *Kelly-Buckley Co.* v. *Cohen*, 195 Mass. 585, 588-591 (1907). Under the terms of a stipulation, Citizens is ultimately responsible for any liability that might be imposed on Supreme.

[5]Optional § 6-106 provides, in relevant part: "Upon every bulk transfer subject to this article for which new consideration becomes payable except those made by sale at auction it is the duty of the transferee to assure that such consideration is applied so far as necessary to pay those debts of the transferor which are either shown on the list furnished by the transferor (Section 6-104) or filed in writing in the place stated in the notice (Section 6-107) within thirty days after the mailing of such notice. This duty of the transferee runs to all the holders of such debts, and may be enforced by any of them for the benefit of all." 2C U.L.A. 85-86 (1991). Legislative omission of this provision from a State's Bulk Transfers Act has led some jurisdictions to conclude, in opinions relied upon by the judge in this case, that transferee liability was not authorized. See note 7, below.

104, 2C U.L.A. 72 (1991).[6] Nowhere, however, does the Act specify that such a levy is the exclusive remedy for noncompliance. The Uniform Commercial Code generally mandates that, "[u]nless displaced by the particular provisions of this chapter, the principles of law and equity . . . shall supplement its provisions." G. L. c. 106, § 1-103, as inserted by St. 1957, c. 765, § 1. The Massachusetts Code commentators anticipated the supplementation of the remedial provisions of art. 6 in precisely this fashion:

> "In neither [§ 6-104 nor § 6-105] . . . are the penalties for noncompliance stated; the transfer is merely said to be 'ineffective' . . . . Thus, the Article would probably not require departure from rules established in prior Massachusetts decisions under the Bulk Sales Act for determining the creditor's rights in instances of noncompliance."

Massachusetts Code Comment to G. L. c. 106, § 6-104, 14 Mass. Gen. Laws Ann. 159 (Law. Coop. 1990). In the case of a violation of the notice provision of our former Bulk Sales Act, the Supreme Judicial Court stated that the sale should be set aside and "the decree [should] provide effective machinery to apply the stock of merchandise pro rata with other creditors, if any there are, to the [creditor's] claim, *or its value if it is no longer existent or available*" (emphasis added). *Security Natl. Bank* v. *General Motors Corp.*, 345 Mass. 434, 442 (1963). See also *Walworth Co.* v. *Locke Stevens & Sanitas, Inc.*, 300 Mass. 557, 559 (1938) (where the property has ceased to exist, the transferree continues to be liable to creditors for its value).

The fastening of liability upon a transferee for a violation of art. 6, even when optional provision § 6-106 has not been adopted, when the transferee has resold or otherwise dissi-

---

[6]Comment 2 to Uniform Commercial Code § 6-111, 2C U.L.A. 104 (1991), indicates that the term levy "should be read broadly as including not only levies of execution proper but also attachment, garnishment, trustee process, receivership, or whatever proceeding, under the state's practice, is used to apply a debtor's property to payment of his debts."

pated the assets or has so commingled them that they are no longer identifiable, accords with what has been approvingly described as "the majority rule." 4 Crandall, Herbert, & Lawrence, Uniform Commercial Code § 28.4.1, at 28:19 (1993). See *Matter of Curtina Intl., Inc.*, 23 B.R. 969, 979 (Bankr. D.N.Y. 1982); *In re Villa Roel, Inc.*, 57 B.R. 835, 839 (Bankr. D.D.C. 1985); 7 Anderson, Uniform Commercial Code § 6-101:14, at 371-372 (1985); 6C Hawkland, Uniform Commercial Code Series § 6-106:02 (1993) (liability should be imposed on a transferee even when the assets have been sold to a bona fide purchaser, lest a loophole develop "that would permit an unprincipled transferee to defeat the creditors of the transferor in any noncomplying bulk transfer, thus frustrating the very object of Article 6").[7]

We therefore conclude that Coastal was entitled under our Bulk Transfers Act to hold Citizens liable for the violation of the Act's mandatory notice provision and should not have been left without a remedy.[8] The amount of that transferee

---

[7]We are aware that some courts have rejected imposition of liability on transferees in reliance on the fact that their particular State's enactment of the Bulk Transfers Act did not include optional provision § 6-106. See *Bill Voorhees Co.* v. *R & S Camper Sales*, 605 F.2d 888, 890-893 (5th Cir. 1979); *American Express Co.* v. *Bomar Shoe Co.*, 125 Ga. App. 408, 410 (1972); *Crosswell Ent.* v. *Arnold*, 422 S.E.2d 157, 160 (S.C. App. 1992). Those courts have decided that the injured creditor's sole remedy is an in rem action against the bulk property. At least one of those same courts has recognized that if the transferee sells or disposes of the assets the proceeds remain subject to garnishment. *American Express Co.* v. *Bomar Shoe Co.*, 125 Ga. App. Ct. at 410. In any event, we reject a construction of art. 6 that can leave a creditor who failed to receive the required notice without a remedy as inconsistent with sound policy, Massachusetts precedent, and the majority rule under the Uniform Commercial Code.

[8]The National Conference of Commissioners on Uniform State Laws and the American Law Institute have recommended the repeal of art. 6 in its entirety. 2C U.L.A. 7 (1991). Their recommendation is based on the fact that today creditors are better able to make informed decisions about extending credit (through credit reporting services and public real estate and personal property records) and that changes in the law provide greater opportunities to collect the debt from the transferor. For States that wish to keep a bulk sales law, the advisors have recommended a revised art. 6 that contains an entire section (§ 6-107) entitled "liability for noncompliance." Under revised § 6-107, noncompliance does not render the sale in-

liability cannot, however, exceed the value of the bulk assets transferred. See 7 Anderson, *supra* § 6-101:14, at 371; 4 Crandall, Herbert, & Lawrence, *supra* § 28.4.1, at 28:20-21. The general yardstick for determining the value of the assets is their fair market value on the date transferred. See G. L. c. 106, §§ 6-102(1)-(2), 9-109(3)-(4); *Matter of Curtina Intl., Inc.,* 23 Bankr. at 979; *In re Villa Roel, Inc.,* 57 B.R. at 839. Where no issue has been raised that the amount paid by the transferee was not the fair market value, that amount will be the maximum amount of the transferee's liability. See *National Bank* v. *Frydlewicz,* 67 Mich. App. 417, 424 (1976). Additionally, as noted, under the prior Bulk Sales Act the Supreme Judicial Court indicated that, "if there were other creditors, [the suing creditor] can be limited to recovering its pro rata share out of the proceeds of the bulk transfer." *Security Natl. Bank* v. *General Motors Corp.,* 345 Mass. at 441.

The bulk transfer property available to satisfy Beaver's debt to Coastal included the service parts, trucks and equipment, and furniture and fixtures transferred by Beaver to Citizens. The parties stipulated that on the date of the transfer Citizens paid $58,459.37 for the service parts, $76,500 for the trucks and equipment, and $41,300 for the furniture and fixtures. The total of $176,259.37 exceeds the amount of Coastal's claim, but we do not have before us the facts necessary to determine Coastal's "pro rata share."

Citizen's conclusory assertion in its brief that the bulk transfer property was valueless because of encumbrances by other creditors, without citation to the record or indication of the amount of such encumbrances, provides no assistance in determining Coastal's entitlement.[9] In the transcript, passing reference appears to other creditors of Viano who also sought to set aside the transfer, but the nature and amounts of their

---

effective but rather makes transferee liability the exclusive remedy. Aggrieved creditors may only recover money damages, and no in rem remedies would be available. Revised § 6-107, Comment 2, 2C U.L.A. 34 (1991).

[9]The inconsistency between this argument and the fact of the substantial consideration Citizens paid for the property is also evident.

claims were not specified. On this record, Coastal's "pro rata share" may well be 100%, but there may exist secured creditors who have priorities which would reduce the amount available to Coastal. Thus, we find it necessary to remand the case to the Superior Court to ascertain what Coastal's share of the value of the bulk transfer assets should be.

2. *Fraud or intent to conceal the transfer.* The judge found that "there was no fraud or intent to conceal the transfer [on the part of either Beaver or Citizens]. Rather there was confusion among the lawyers as to whether the act applied to the transfer." Coastal contends that this finding is clearly erroneous and against the weight of the evidence. It relies for this argument on the conceded fact that Beaver sold off all its home heating oil inventory to its customers, at Citizens' request, prior to the closing. Upon review "[w]e give due weight to the findings of the judge who has heard the testimony and who has had an opportunity to weigh the credibility of the witnesses. *Seder* v. *Gibbs*, 333 Mass. 445, 446 (1956). [Her] findings of fact will not be set aside unless clearly erroneous. Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974)." *Simon* v. *Weymouth Agric. & Indus. Soc.*, 389 Mass. 146, 148-149 (1983). Our review convinces us that the judge's challenged finding was not a mistake, see *Kendall* v. *Selvaggio*, 413 Mass. 619, 620-621 (1992), but rather was amply supported by the evidence.

The upshot of the evidence, supporting the judge's conclusion, which in turn depended heavily on credibility assessments, is that the parties to the sale transaction may not have been sure that the Act was implicated and that they made a business decision not to comply with the Act. In so doing, they justifiably relied on advice of counsel. There is no evidence to suggest that Viano did not want to comply with the provisions of the Act in order to defraud his creditors. Citizens' attempt to protect itself against mistake in the noncompliance decision by inserting certain contingency provisions into the sale contract, including an indemnification clause with respect to any suits arising out of the Act and a clause allowing it to rescind the transaction for an eight-

month period following the sale, reflected prudent planning, not guilty knowledge.[10]

On August 11, 1992 (almost eight months after trial), Coastal moved to amend its complaint "to conform the pleadings to the evidence" so as to allege a fraudulent conveyance and a violation of G. L. c. 93A on the part of Beaver and Citizens. The motion was denied by the judge because "it sets forth a new cause of action." We need not pass on Coastal's argument that the judge committed an abuse of discretion in so ruling. Any error would have been harmless in light of the judge's proper findings that there was no fraud involved nor any intent to conceal the transfer. Those findings disable Coastal from prevailing on both a fraudulent conveyance claim and a c. 93A claim, because it would be unable to make out an essential element of each — either "actual intent" to defraud, see G. L. c. 109A, § 7, or fraud or "rascality" sufficient to constitute an "unfair or deceptive act." See G. L. c. 93A, §§ 2, 11; *McEvoy Travel Bureau, Inc.* v. *Norton Co.*, 408 Mass. 704, 714 (1990); *Levings* v. *Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498, 504 (1979).

3. *Disposition.* To the extent that the judgment holds that art. 6's six-month statute of limitations barred Coastal's recovery and that Citizens is not liable to Coastal despite the Bulk Transfers Act notice violation, it is reversed. The case is remanded to the Superior Court for a determination of Coastal's share of the value of the bulk transfer assets for which Citizens shall be liable. The judgment in all other re-

---

[10]There is nothing to Coastal's contention, based on *Adams* v. *Young*, 200 Mass. 588 (1909), that mere noncompliance with the Act constitutes fraud. That decision did state that "[t]he effect of the [former Bulk Sales Act] is to make . . . non-compliance conclusive of fraud as to creditors of the seller." *Id.* at 591. The former Bulk Sales Act, however, in stark contrast to the present Act, explicitly described a bulk sale in violation of the notice provision as "fraudulent and void." The sanction for noncompliance with art. 6 is solely to render the transfer ineffective, not to lay the parties open to additional fraud-based claims. See *Boss* v. *Bassett Furniture Indus. of N.C.*, 249 Ga. 166, 169 (1982).

spects is affirmed. The order denying posttrial amendment of the pleadings is also affirmed.

*So ordered.*