Garsh, J.
Plaintiff Coastal Oil New England, Inc. (“Coastal”) brought an action in 1990 seeking payment of a debt incurred by Beaver Coal and Oil Company, Inc. (“Beaver") and monetary damages arising out of alleged breaches of the Bulk Transfers Act. Cargill, Inc. dba Northeast Petroleum (“Cargill”) and BayBank, N.A. (“BayBank”), both of whom are also creditors, have intervened as plaintiffs in this action.[3] The matter is now before the court on cross-motions for summary judgment filed by BayBank and Citizens with respect to BayBank’s claim and by Citizens and Coastal with respect to Coastal’s claim. For the reasons discussed below, BayBank’s and Coastal’s motions for summary judgment are ALLOWED, and Citizen’s cross-motions for summary judgment are DENIED.
Background
On December 15, 1989, in Norfolk Superior Court, BayBank filed a contract action against Beaver and certain individuals seeking payment of funds owed under a note. Citizens was not a party to that action.
On January 31,1990, Cargill commenced an action in Norfolk Superior Court against Beaver for payment of outstanding debts. Cargill also sued Citizens on the theory that Citizens was liable for payment of the debt owed by Beaver under the theory of corporate successor liability. Cargill independently alleged that Citizens had violated the Bulk Transfers Act by not giving proper notice to Beaver’s creditors.
On February 8, 1990, Coastal filed the current action alleging that Beaver and/or Citizens owed Coastal for payment of outstanding debts. Coastal alleged that the defendants had violated the Bulk Transfers Act by not giving proper notice to Beaver’s creditors.
On July 27, 1992, summary judgment was entered in favor of BayBank against Beaver and Michael Viano awarding it damages equal to the outstanding debt in the amount of $48,144.87, with interest in the sum of $2,027.46 accruing before August 6, 1990, plus interest calculated at the rate of $14.7108 per day from August7,1990. It is undisputed that the note provides for the payment to BayBank of costs and attorney’s fees incurred in connection with the enforcement of its rights under the note.
On August 26, 1992, following a jury-waived trial in the instant action, this court (Donovan, J.) concluded that the transfer of Beaver to Citizens was subject to the Bulk Transfers Act and that Citizens had failed to comply with the ten day notice requirement. However, the court ruled that the violation did not give rise to a cause of action because the transferee had subsequently sold the assets to a bona fide purchaser. Beaver defaulted and was ordered to pay Coastal the amount of $140,552.99 with interest from February 28, 1990.
On October 1, 1993, Cargill’s claim pending in Norfolk Superior Court was decided on cross-motions for summary judgment. That court “ruled that there was a de facto merger of Citizens and Beaver, and that Citizens was liable to Northeast as the successor corporation to Beaver. He also ruled that Citizens had failed to comply with the notice provisions of the Bulk Transfers Act.” Cargill, Inc. v. Beaver Coal & Oil Co., Inc., 424 Mass. 356, 357 (1997). Judgment was entered in favor of Cargill against Citizens in the amount of $254,660.75, the amount owed by Beaver to Northeast, plus interest, costs, and attorneys fees.
The decision in this action holding that Coastal’s claim was barred was appealed. The appeal was decided on January 6, 1995. Coastal Oil New England, Inc. v. Citizens Fuels Corp., 38 Mass.App.Ct. 26 (1995). The Appeals Court upheld the trial court’s ruling that the transfer had violated the Bulk Transfers Act but reversed the ruling that the violation did not give Coastal a cause of action. Id. at 27. The amount of Coastal’s liability, as transferee, “cannot, however, exceed the value of the bulk assets transferred.” Id. at 33. The Court did not determine Coastal’s pro rata share since “there may exist secured creditors who have priorities which would reduce the amount available to Coastal.” Id. at 34. The Appeals Court remanded to the Superior Court for a determination of Coastal’s share of the value of the bulk transfer assets. An order denying a motion by Coastal, filed eight months after trial, to permit it to assert claims for fraudulent conveyance and violation of Chapter 93A was also affirmed in light of the trial court’s findings that there had been no fraud nor intent to conceal the transfer. Id. at 35.
*709 On May 20, 1996, Citizens filed a motion for stay of this proceeding upon the following grounds:
The subject matter of this instant litigation is substantially identical to ... a case which arose out of the same transaction which gave rise to this litigation and involves the same issues regarding the Bulk Sales Transfer Act that were raised in the Court of Appeals’ opinion in this matter, pursuant to which this matter was remanded to this Court for further proceedings.
The motion to stay was allowed.
On remand, Coastal and Citizens filed cross-motions for summary judgment, which were denied on April 10, 1996. Citizens was ordered to notify parties with an interest in the bulk transfer assets at issue of the opportunity to intervene.
On October 1, 1996, Cargill’s Motion to Intervene and for a Stay of Proceedings, pending a final decision on Cargill’s appeal by the Supreme Judicial Court, was allowed.
On November 27, 1996, BayBank was allowed to intervene. In its complaint, BayBank alleges, inter alia, that it is a secured creditor of Beaver and that Citizens was on notice of the security interest of BayBank in the assets of Beaver. BayBank alleges that its security interest was not terminated by the sale of Beaver’s assets to Citizens. No other parties sought leave to intervene.
In a decision dated March 5, 1997, the Supreme Judicial Court agreed with the trial court “that Citizens is the corporate successor of Beaver and is liable to Northeast for the full amount of Beaver’s indebtedness.” Cargill, Inc. v. Beaver Coal & Oil Co., Inc., 424 Mass, at 357. The Court declined, therefore, to “pass on the judge’s rulings concerning the Bulk Transfers Act.” Id.
In ruling upon the corporate successor liability claim, the Court concluded that the trial judge was correct that Citizens is liable for Beaver’s preexisting debts based on the de facto merger doctrine. Id. at 359.
The factors that courts generally consider in determining whether to characterize an asset sale as a de facto merger are whether (1) there is a continuation of the enterprise of the seller corporation so that there is continuity of management, personnel, physical location, assets, and general business operations; whether (2) there is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation; whether (3) the seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; and whether (4) the purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation. ... No single factor is necessary or sufficient to establish a de facto merger.... We agree with the judge that each factor is satisfied in this case.
Id. at 359-60.
The Court went on to note that it was undisputed that, following the transaction, Citizens conducted the business in substantially the same fashion as Beaver, using Beaver’s name, from the same locations, with the same employees and operational management. Beaver’s general manager, a key employee, retained the same position with Citizens as he had with Beaver, and his duties at Citizens were exactly the same as his duties at Beaver. All the employees of Beaver became employees of Citizens with, but one exception, all maintaining their same positions and responsibilities. “In short, the business of Citizens was conducted by exactly the same people as the business of Beaver. In addition, Michael Viano, the sole shareholder, officer and director of Beaver, became a director and a shareholder of Citizens.” Id. at 360. Citizens also used the same telephone numbers as Beaver, the same trucks, and the same equipment. Beaver’s customer lists and contracts were transferred to Citizens, all whom were serviced just as they had been by Beaver. “... Citizens simply became Beaver.” Id. at 361.
Concerning the second factor, the Court pointed out that Beaver’s sole shareholder had acquired a twelve and one-half percent shareholder interest in Citizens and also became a director of Citizens. “While this does not constitute shareholder continuity in its fullest sense, there is no requirement that there be complete shareholder identity between the seller and a buyer before corporate successor liability will attach.” Id.
The Court found the third factor to have been satisfied because the sales agreement required Beaver to cease all its operations, and it did so. Beaver’s failure to have dissolved was deemed not to preclude a finding of de facto merger. “It is not disputed that after the transaction Beaver did not perform any further operations; its entire operational business was assumed by Citizens. For all practical purposes, Beaver ceased to exist.” Id.
As to the fourth factor, the Court pointed out that Citizens assumed those obligations of Beaver necessary for the uninterrupted continuation of normal business operations. Beaver and Citizens agreed to pay certain creditors of Beaver, with preference given to creditors that continued to do business with Citizens. Citizens also assumed all executory contracts to install heating equipment for customers, and it assumed service contracts and the obligation to deliver oil to customers with credit balances. Id. at 362.
Citizens held itself out to the world as the same enterprise as Beaver, apparently not notifying its *710 customers of any change in ownership. It continued to function in the same manner with the same employees, delivering the same product, and providing the same services as Beaver. Citizens argues that the public policy concerns such as tort liability or compliance with environmental laws that have impelled a finding of successor liability in other cases are not present in this case. We consider the fair remuneration of corporate creditors a policy worthy of advancement. . . . Where, as here, the acquiring enterprise assumed all the benefits of and held itself out to the world as the same enterprise as its predecessor ... we conclude that Citizens is the corporate successor to Beaver, and is liable to Northeast for Beaver’s preexisting debt to it.

Id.

Discussion
This Court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Because the burden is on the movant, the evidence presented is construed in favor of the party opposing the motion, and the opposing party is given the benefit of all favorable inferences that can be drawn from that evidence. Parent v. Stone & Webster Engineering Corp., 408 Mass. 108, 12-113 (1990).
A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact in order to defeat the motion. Pederson v. Time, Inc., 404 Mass, at 16-17. If the nonmoving party does not do so, summary judgment must be granted.
I. BayBank v. Citizens
BayBank maintains that it is entitled to recover the amount of money owed to it by Beaver from Citizens under the corporate successor doctrine based upon the fact that the Supreme Judicial Court has held that Citizens is the corporate successor of Beaver. In so arguing, BayBank seeks to use collateral estoppel offensively as a tool to preclude the defendant from relitigating an issue previously decided in a suit to which BayBank was not a party. Generally, collateral estoppel bars a party from relitigating an issue of fact or law that a court of competent jurisdiction has already decided in another proceeding.
Before applying collateral estoppel to preclude a party from relitigating an issue, a court must find that the issue decided in the prior adjudication was identical with the one presented in the action in question and that there was a final judgment on the merits. Martin v. Ring, 401 Mass. 59, 62 (1987). Mutuality of the parties between the first and second action is not required when collateral estoppel is used offensively. In such a case, the court must also find that the party to be estopped had a full and fair opportunity to litigate the issue in the first action. Brunson v. Wall, 405 Mass. 446, 451 (1989). See also Martin v. Ring, 401 Mass, at 61.
Whether Citizens is the corporate successor of Beaver is an issue that has previously been decided by a court of competent jurisdiction. The decision by the Superior Court in the Norfolk case commenced by Cargill and its affirmation by the Supreme Judicial Court in Cargill, Inc. v. Beaver Coal & Oil Co., Inc., 424 Mass, at 356, determined that Citizens indeed is the corporate successor of Beaver, and, as a result, must pay Beaver’s creditors. BayBank makes the very same claim here, namely that Citizens, as the corporate successor of Beaver, is liable to it for Beaver’s debt. The issue decided in the Cargill adjudication is identical with the one presented by BayBank.
The decision in Norfolk that Citizens is the corporate successor of Beaver was rendered by a court of competent jurisdiction; the finding that Citizens is the corporate successor to Beaver was actually litigated and necessary to the decision, and there was “available some avenue for review of the prior ruling on the issue.” Sena v. Commonwealth, 417 Mass. 250, 260 (1994). Not only was there an avenue for review, but review actually was taken and decided by a court of competent jurisdiction, the Supreme Judicial Court. There is a final judgment on the merits.
The third question to be answered also results in an affirmative response. Citizens had a full and fair opportunity to litigate the relevant issue in the Cargill action. It had the opportunity to be fully heard and to submit whatever evidence it deemed relevant in connection with the summary judgment motion or by way of a motion to reconsider after the summary judgment decision was rendered. It also had a full and fair opportuniiy to make legal arguments in the appeal it pursued.
Even if, as here, all the elements of collateral es-topped are satisfied, a court has discretion not to apply the doctrine offensively if it would be unfair to the defendant. Bar Counsel v. Board of Bar Overseers, 420 Mass. 6, 11 (1995). In Bar Counsel, the Supreme Judicial Court enunciated, as follows, the factors to *711 be considered in deciding whether using collateral estoppel offensively would be fair to the defendant:
(1) Treating the issue as conclusively determined would be incompatible with an applicable scheme of administering the remedies in the actions involved;
(2) The forum in the second action affords the party against whom preclusion is asserted procedural opportunities in the presentation and determination of the issue that were not available in the first action and could likely result in the issue being differently determined;
(3) The person seeking to invoke favorable preclusion, or to avoid unfavorable preclusion, could have effected joinder in the first action between himself and his present adversary;
(4) The determination relied on as preclusive was itself inconsistent with another determination of the same issue;
(5) The prior determination may have been affected by relationships among the parties to the first action that are not present in the subsequent action, or apparently was based on a compromise verdict or finding;
(6) Treating the issue as conclusively determined may complicate determination of issues in the subsequent action or prejudice the interests of another party thereto;
(7) The issue is one of law and treating it as conclusively determined would inappropriately foreclose opportunity for obtaining reconsideration of the legal rule upon which it was based;
(8) Other compelling circumstances make it appropriate that the party be permitted to relitigate the issue.
Id. at 11-12 (quoting Restatement (Second) of Judgments §29 (1982)). Additionally, it should also be determined whether “disparate burdens of proof existed in the two proceedings.” Id. at 12. A weighing of all these factors tips in favor of applying collateral estoppel so that Citizens is liable to BayBank to the same extent as Beaver.
Contrary to Citizens’ contention, it would not be incompatible with or violate the remand directive form the Appeals Court “to ascertain what Coastal’s share of the bulk transfer assets should be,” Coastal v. Citizens, 38 Mass.App.Ct. at 34, to permit BayBank to proceed against Citizens on the corporate successor liability doctrine theory. When the Appeals Court rendered its decision in this action, the Supreme Judicial Court’s opinion in Cargill had not yet been handed down and BayBank had not yet intervened in the instant action. The Appeals Court directive “to ascertain what Coastal’s share of the bulk transfer assets should be” has been carried out. See Section II, infra. The Appeals Court decision addresses other creditors only to the extent that the Court could not assess Coastal’s award given that there might be other creditors whose awards would alter Coastal’s award. Id. at 34. Allowing BayBank to use collateral estoppel to preclude Citizens from relitigating its corporate successor status is fully consistent with the remand order and compatible with the applicable scheme of administering the remedies in the action involved. If, by virtue of collateral estoppel, BayBank is entitled to be paid by Citizens from that corporation’s own monies, it is not a creditor whose award would affect Coastal’s award since, as with Cargill, payment to BayBank would not be coming from the bulk sales assets, all of which would then be available for Coastal. Thus, in order to determine Coastal’s award as directed by the Appeals Court, it is necessary to decide whether Bay-Bank can recover directly from Citizens under the corporate successor doctrine.[4]
The forum in both actions is the Superior Court. The current forum affords no greater procedural opportunities in the presentation and determination of the issues that were not available in the first action.
The third factor does not weigh in favor of BayBank. BayBank could have sought to consolidate its action with that of Cargill, but its failure to do so, given all the other factors, does not make offensive use of collateral estoppel unfair.
The determination relied on as preclusive, that Citizens is the corporate successor of Beaver, is not contrary with any other determination of the same issue.
Citizens’ argument that the prior determination may have been affected by the relationships among the parties to the first action that are not present in the subsequent action is without merit. While Cargill as a trade creditor may not have known about the sale and BayBank as a secured creditor knew about the sale of Beaver to Citizens, nothing in the legal analysis of why Citizens is the corporate successor of Beaver turns on the status of the creditor. “Citizens simply became Beaver.” Cargill, Inc. v. Beaver Coal & Oil Co., Inc., 424 Mass, at 361. BayBank’s relationship with Beaver, as opposed to Cargill’s relationship with Beaver, does not affect that finding. The prior determination could not have been affected by relationships among the relevant parties to the first action that are not present in this action because the only relevant relationship, that between Beaver and Citizens, is the same in both actions.
Holding Citizens to be the corporate successor of Beaver in this action would neither complicate the determination of issues in this action nor prejudice the interests of any other party. In determining the amount that should be awarded to BayBank and Coastal, application of the principles of collateral estoppel would result in BayBank receiving its award from Citizens and Coastal receiving its award from Citizens as holder of the bulk sales assets. Determining how much Coastal is entitled to is simplified, not *712 made more complicated, by BayBank seeking to hold Citizens liable as the corporate successor of Beaver. Citizens argues that it would be substantially prejudiced by applying the corporate successor doctrine in this case because it “has been litigating this matter for over eight years and []has succeeded in obtaining a narrowly focused judgment in its favor.” The Cargill judgment is hardly narrow. “The liability of [Citizens] was fully litigated and firmly established in a well-reasoned opinion. There was nothing tentative about the decision.” Abbott Laboratories v. Thermo Chem, Inc., 790 F.Supp. 135, 140 (W.D. Mich. 1991). When the Supreme Judicial Court rendered its decision, other preexisting debts of Beaver had not yet been paid. Citizens had no reasonable right to assume that no preexisting debtor other than Cargill would seek to hold it liable for its conduct in becoming Beaver.
Treating the corporate successor issue as conclusively determined would not inappropriately foreclose any opportunity for obtaining reconsideration of the legal rule upon which it is based. The issue has been fully litigated and appealed to the extent allowed by law, and no new circumstances have manifested themselves that would suggest that the Supreme Judicial Court would rule differently if given a second chance to review the standards for imposing corporate successor liability.
Finally, the two actions have the same burden of proof. No compelling considerations make it appropriate to permit Citizens to relitigate the issue of its status as a corporate successor. Citizens had every motivation to vigorously defend against the corporate successor claim in the Cargill action since, by doing so, it could limit its liabilfiy to the bulk sales assets instead of paying Beaver’s debts in full out of Citizens’ own funds. Cargill’s claim exceeded two hundred fifty thousand dollars, more than five times the amount of BayBank’s claim. Furthermore, a ruling in favor of Cargill on the corporate successor claim would be an obvious invitation to Beaver’s remaining creditors to demand payment from Citizens. Citizens had “every incentive, given [its] potential liability, to litigate the prior case vigorously.” Abbott Laboratories, 790 F.Supp. at 140.
A finding of corporate successor liability has been applied in other courts in unrelated proceedings pursuant to principles of collateral estoppel. E.g., Raytech v. White, 54 F.3d 187 (3rd Cir.), cert. denied, 516 U.S. 914 (1995); Raytech Corp. v. Official Committee of Unsecured Creditors, 217 B.R. 679, 685-86 (Bankr. D.Conn. 1998). In the Raytech cases, the first court to decide an asbestos-related products liability case against Raymark found that Raytech was a successor to Raymark and must pay the plaintiffs directly. Schmoll v. A CandS, Inc., 703 F.Supp. 868 (D.Or. 1988), aff'd. 977 F.2d 499 (9th Cir. 1992). In a second action, Raytech sought a declaration that it was not liable for other asbestos-related personal injury claims asserted against Raymark. Raytech was found to be collaterally estopped from relitigating the successor liability issue because of the determination that had been made in the products liabilfiy case. Raytech v. White, 54 F.3d at 187. Raytech then sought to limit the finding of successor liability to certain claims, as Citizens does in this case. The United States Bankruptcy Court, applying offensive non-mutual collateral estoppel principles, held that Raytech was estopped from relitigating the successor liability issue because previous decisions had found that Raytech did not respect the corporate form in buying Raymark, and, as a result, it was responsible for all of Raymark’s debts. Raytech Corp. v. Official Committee of Unsecured Creditors of Raytech Corp., 217 B.R. at 688-89. Nothing in the first decision, the court found, purported to limit successor liability “as to amount, time, or creditor.” Id. at 608. Similarly here, once Citizens became Beaver, it forfeited the chance to pick and choose which of Beaver’s debts it would pay. See also Abbott Laboratories, Inc., 790 F.Supp. at 140 (“It would be a waste of the Court’s and the parties’ resources to relitigate the issue of the liability of the spinoff corporations”). It is not unfair to apply the collateral estoppel doctrine offensively against Citizens.
Accordingly, in order to recover from Citizens, all BayBank needs to show is that it is a creditor of Beaver. The fact that BayBank is a creditor is undisputed, as is the amount that is owed, namely $48,144.87, plus interest, costs, and attorney’s fees.
II. Coastal v. Citizens
It has previously been determined that the total value of the Bulk Sales Assets is $176,259.37. Coastal OilNew England, Inc. v. Citizens Fuels Corp., 38 Mass.App.Ct. at 33. It has also been previously determined that the value of Beaver’s debt to Coastal is $140,552.99. Id. at 28. Because BayBank has sought and obtained a judgment against Citizens directly under the corporate successor liability theory, no creditor, other than Coastal, need be paid from the bulk sales assets. The Court rejects Citizens’ argument that any money it has already paid to Cargill or must now pay to BayBank must be allocated to the bulk sales assets pro rata to reduce Coastal’s recovery.[5] Coastal is entitled to use all the bulk transfer properly to recover its debt.
ORDER
For the foregoing reasons, it is hereby ORDERED that:
1. Judgment shall enter in favor of BayBank against Citizens in the amount of $48,144.87, with interest in the sum of $2,027.46 up to August 6, 1990 and interest from August 7, 1990 at the rate of $14.7108 per day, plus reasonable costs and attorneys fees incurred in connection with the enforcement of BayBank’s rights under its note:
2. BayBank shall serve its motion for costs and attorneys fees within ten days, said motion to be filed thereafter pursuant to Superior Court Rule 9A;
*713 3, Judgment shall enter In favor of Coastal against Citizens solely in its capacity as transferee of the bulk transfer property of Beaver, in the amount of $140,552.99, plus interest and costs, with said sum not to exceed $176,259.37; and
4. A hearing shall be held on April 7, 1999 on the pending motions which were reserved, of Citizens and BayBank against Coastal for sanctions.

 Cargill has moved to dismiss its complaint since it has now been fully paid out of assets other than the Bulk Sales Assets. That motion has been allowed.

 In any event, this court has the discretion to permit amendments after remand. Jones v. Wayland, 380 Mass. 110, 114-15 (1980). A different theory from that asserted by the original claimant can be asserted by an intervener who intervenes after the Appeals Court decision. It is particularly appropriate to permit BayBank to raise the issue now since the Supreme Judicial Court had not yet ruled on the corporate successor issue when the Appeals Court rendered its decision in this case.

 Nothing in Rome Industries, Inc. v. Instel Southwest, 683 S.W.2d 777 (Tex. App. 1984), requires the result sought by Citizens. It would be neither logical nor fair to reduce the amount of the bulk sales assets by the amount of Beaver’s pre-transfer indebtedness, when Citizens voluntarily paid some creditors and was required to pay two others as a result of becoming Beaver. To allow the amounts paid or to be paid to Cargill and BayBank to affect Coastal’s recovery from the bulk sales assets would undercut both the theory of corporate successor liability and the Bulk Transfers Act.