COASTAL OIL NEW ENGLAND, INC., & another[1] *vs.* CITIZENS
FUELS CORPORATION & another.[2]

No. 00-P-1342.

Suffolk. March 8, 2002. - June 5, 2002.

Present: ARMSTRONG, C.J., KAPLAN, & McHUGH, JJ.

*Uniform Commercial Code,* Bulk transfer. *Estoppel. Collateral Estoppel. Practice, Civil,* Attorney's fees, Costs, Interest.

A corporation was collaterally estopped from denying liability to a creditor of the corporation, where a pivotal issue advanced in the present action was an issue necessary to the decision of an earlier case and was actually litigated by the corporation; further, this court concluded that there was no incompatibility between an earlier order remanding the case for a determination of the corporation's liability with regard to certain bulk transfers and the consideration and disposal of the creditor's estoppel claim, and that the corporation was responsible for certain interest by reference to G. L. c. 231, § 6H. [72-74]

CIVIL ACTION commenced in the Superior Court Department on February 28, 1990.

Following review reported in 38 Mass. App. Ct. 26 (1995), further proceedings were held and motions for summary judgment were heard by *E. Susan Garsh,* J.

*Alan B. Almeida* for Citizens Fuels Corporation.

*Theresa Kelly Banash* for Coastal Oil New England, Inc.

*Arlene Beth Marcus* for BayBank, N.A.

KAPLAN, J. By our decision in *Coastal Oil New England, Inc.* v. *Citizens Fuels Corp.,* 38 Mass. App. Ct. 26 (1995), we remanded the action to the Superior Court for further proceedings. The present appeal arises from those proceedings, which broadened out according to the logic of events. It will be convenient to track the litigation from start to finish.

[1]BayBank, N.A., entered the action as an intervener.
[2]Citizens Corporation.

Coastal Oil New England, Inc. (Coastal), on February 28, 1990, sued Beaver Coal and Oil Company, Inc. (Beaver), and Citizens Fuels Corporation (Citizens)[3] in Superior Court, first, for collection of a debt owing to it by Beaver for oil products, etc., and, second, for damages against Citizens for the latter's failure to give timely advance notice under the Bulk Transfers Act, G. L. c. 106, § 6-105, of a sale and transfer of most of the assets of Beaver to Citizens.[4] Beaver was defaulted and suffered a judgment of $140,552.99 and interest in Coastal's favor. The action against Citizens was tried jury-waived. The judge held that Coastal had the basis for a claim against Citizens under the Bulk Transfers Act, but the action failed because Citizens had sold the Beaver assets, passing them to Supreme Fuel Company (Supreme), a bona fide purchaser for value.

From the judgment against it, Coastal took its appeal to our court. We held that the sale to a bona fide purchaser did not absolve Citizens of liability under the Bulk Transfers Act. Thus, Coastal could claim against Citizens for the Beaver assets in Citizens' hands, or, more aptly, since those assets had passed to Supreme, against Citizens for the fair market value of the assets, taken to be $176,259.37. See *Coastal Oil New England, Inc.*, 38 Mass. App. Ct. at 29-34. But a remand to the Superior Court was necessary "for a determination of Coastal's share of the value of the bulk transfer assets for which Citizens shall be liable," *id.* at 35, for "there may exist secured creditors who have priorities which would reduce the amount available to Coastal" (and, we might have added, had we anticipated the facts, there may exist unsecured creditors entitled to share on the same basis as Coastal). *Id.* at 34.

Upon remand, there were cross motions for summary judgment. A judge of the Superior Court held that creditors who might qualify (whether as secured or unsecured creditors) should be invited to intervene in the action, looking to the proper marshaling of claims. He denied the summary judgment motions and ordered Citizens to file a list of other bulk transfer

---

[3]For most purposes of this appeal, Citizens may be taken to include the parent Citizens Corporation as well as Citizens Fuels Corporation.

[4]The act, G. L. c. 106, §§ 6-101 et seq., was repealed by St. 1996, c. 160, § 3, effective October 6, 1996.

claimants and serve notice upon them of their opportunity to intervene in the action. Under this procedure, two of the three on Citizen's list applied to intervene — Cargill Incorporated (Cargill) and BayBank, N.A. (BayBank).

Cargill was an unsecured creditor on the same footing as Coastal. Evidently there was no objection to Cargill's intervention, and this was allowed on October 1, 1996.

BayBank had lent money to Beaver and in fact had an unsatisfied judgment of July 27, 1992, against Beaver for $48,144.87 with interest and attorneys' fees and costs. BayBank applied to intervene in the instant action. In its intervention complaint, BayBank claimed as a secured creditor of Citizens or, if that should fail, as an unsecured creditor. Coastal and Cargill opposed the intervention: there was serious contention that BayBank had released any security interest in the transferred assets and also doubt whether BayBank had fulfilled a six-month filing requirement for claims under the Bulk Transfers Act. As far as appears, Citizens did not join in opposition to BayBank's intervention.[5] The intervention was allowed on November 27, 1996, leaving material issues for trial or other disposition.

With the case approaching trial, something fresh appeared. On January 31, 1990, Cargill had commenced a direct action in Superior Court against Beaver and Citizens. There was judgment against Beaver for indebtedness in principal amount of $254,660.75. Cargill claimed that amount against Citizens on a "corporate succession" ("de facto merger") theory; alternatively, Cargill claimed an amount against Citizens not to exceed principal of $176,259.37 for the breach by Citizens of the advance notice provisions of the Bulk Transfer Act. Upon cross-motions for summary judgment, Cargill as plaintiff succeeded against Citizens on both theories. The Supreme Judicial Court transferred Citizens' appeal from our court and in its decision of March 5, 1997, approved recovery on the "corporate succession" basis. *Cargill, Inc.* v. *Beaver Coal & Oil Co.*, 424 Mass. 356 (1997). Corporate-succession liability, according to the court, exists only in strictly defined circumstances of asset sales:

---

[5]Citizens answered BayBank's intervention complaint after the intervention was allowed.

"The factors that courts generally consider in determining whether to characterize an asset sale as a de facto merger are whether (1) there is a continuation of the enterprise of the seller corporation so that there is continuity of management, personnel, physical location, assets, and general business operations; whether (2) there is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation; whether (3) the seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; and whether (4) the purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation."

*Id.* at 359-360. As the court explained in some detail, each of the four requisites was present in the case there at bar, so Citizens became liable to Cargill just as Beaver had been liable to Cargill. Deciding the case on the corporate-succession basis, the court found it unnecessary to deal with the Bulk Transfers Act claim.

### BayBank *vs.* Citizens

To return to the present action, Cargill's intervention was dismissed with prejudice when it appeared Citizens had paid in full the judgment Cargill recovered against it under the Supreme Judicial Court's decision.

At that point, BayBank, the remaining intervener, advanced the proposition that by the doctrine of "nonmutual offensive collateral estoppel," Citizens in consequence of the Supreme Judicial Court decision was estopped from denying liability to BayBank in the full amount that had been owing to BayBank from Beaver ($48,144.87 principal plus interest under the judgment of July 27, 1992). BayBank made this claim in its role as unsecured creditor of Citizens.[6]

Cross motions for summary judgment laid the estoppel ques-

---

[6] Here BayBank was forgoing any security interest it might have, as well as any rights it might assert under the Bulk Transfers Act.

tion before another Superior Court judge, and she dealt with it in meticulous sequential fashion. " '[T]he offensive use of collateral estoppel is a generally accepted practice in American courts,' *Aetna Cas. & Sur. Co.* v. *Niziolek*, 395 Mass. 737, 744 (1985), and occurs when a plaintiff seeks to prevent a defendant from litigating issues which the defendant has previously litigated unsuccessfully in an action against another party. *Parklane Hosiery Co.* v. *Shore*, 439 U.S. 322, 326 n.4. (1979)." *Bar Counsel* v. *Board of Bar Overseers*, 420 Mass. 6, 9 (1995). A so-called "mutuality" requirement has long been abandoned in this Commonwealth. See *Home Owners Fed. Sav. & Loan Assn.* v. *Northwestern Fire & Marine Ins. Co.*, 354 Mass. 448, 455 (1968).

The judge reviewed the conditions for applying the estoppel doctrine invoked by BayBank. The issue of corporate succession advanced in the present action was identical with the issue earlier decided in the *Cargill* case. Citizens had had a full and fair opportunity to litigate the issue. The issue was actually litigated and necessary to the decision of the case. There had been a final judgment on the merits. Citizens had an avenue of review which in fact it pursued to a conclusion (unfavorable to itself). Although the conditions for applying the estoppel rule were met, the judge retained a discretion, as she recognized, to deny the estoppel after weighing a series of considerations addressed to practical fairness, those outlined in Restatement (Second) of Judgments § 29 (1982), and adopted in the *Bar Counsel* case, 420 Mass. at 11-12. The judge concluded that Citizens should be held estopped, and we agree. See generally Cassad & Clermont, Res Judicata 169-188 (2001); Shapiro, Civil Procedure: Preclusion in Civil Actions 74-118 (2001).

*Further remarks.* As noted above, BayBank's intervention complaint had asserted a security interest and a claim as unsecured creditor under the Bulk Transfers Act. After the decision in the *Cargill* case, BayBank presented a new contention on grounds of estoppel. Could this be received as an enlargement of the intervention? As the judge wrote, she had discretion to allow the assertion of the theory as it became available, see *Jones* v. *Wayland*, 380 Mass. 110, 114-115 (1980); it could be formalized by amendment, if thought desirable, even after

judgment. We add there was no incompatibility between the remand order and the consideration and disposal of BayBank's estoppel claim. This was a natural although perhaps unexpected culmination of a phase of the remand. The remand, as it developed, involved an ordering of the relationships among five companies.[7]

## Coastal *vs.* Citizens

Coastal made no claim for itself on a corporate-succession theory and has remained a claimant grounding itself on the untimely notice of the transfer of the Beaver assets under the terms of the Bulk Transfers Act. The judge held, and we agree, that the claim succeeded. Since the judgments recovered by BayBank and Cargill were payable out of Citizens' own monies rather than the bulk transfer assets or value, Coastal is left as the only claimant (for $140,552.99 and interest) against that value ($176,259.37). A question: suppose the interest item calculated and added to the principal amount of $140,552.99 exceeds the $176,259.37? The judge considered the question and held Citizens was responsible for the excess amount by reference to G. L. c. 231, § 6H, reproduced in the margin.[8] We agree.

---

[7]Citizens' brief on this appeal performs the perverse feat of virtually ignoring the decision in the *Cargill* case and its consequences. It attempts to narrow the permissible scope of the remand proceedings and to argue that Coastal and BayBank should recover no more than their ratable shares of the $176,259.37, with the amount of Cargill's judgment against Citizens figuring in the calculation as the basis of a third ratable share. Citizens' approach is incongruous.

In its answer to BayBank's intervention complaint, Citizens included among its boilerplate defenses a reference to limitations, without specifying which statute of limitations supposedly applied or what event supposedly initiated the period. Citizens mentions limitations in its brief. Assuming the matter is preserved for appeal, we note, as BayBank points out, that the bank's ultimate allegation of corporate succession was no more than a counterpart of its judgment against Beaver of July 27, 1992. Further, the allegation may be "related back" to Coastal's complaint in the present action under the liberal provision of Mass.R.Civ.P. 15(c), 365 Mass. 762 (1974). See Smith & Zobel, Rules Practice § 15.9 (1974 & Supp. 2002).

[8]"In any action in which damages are awarded, but in which interest on said damages is not otherwise provided by law, there shall be added by the clerk of court to the amount of damages interest thereon at the rate provided by section six B to be determined from the date of commencement of the ac-

*Conclusion.* The judgment appealed from in substance is as follows: Judgment for intervener BayBank against Citizens Fuels Corporation for $48,144.87 with interest of $2,027.46 up to August 6, 1990, interest from August 7, 1990, at the rate of $14.7108 per day, attorneys' fees of $19,000, and costs of the action; judgment for the plaintiff Coastal against Beaver by default for $140,552.99 plus interest from the date of filing the complaint, February 28, 1990, and costs of $662.00; judgment for the plaintiff Coastal against Citizens Fuels Corporation and Citizens Corporation for $140,552.99 plus interest from the date of filing the complaint, February 28, 1990, and costs of $662.00.

The judgment is affirmed.

*So ordered.*

tion even though such interest brings the amount of the verdict or finding beyond the maximum liability imposed by law." G. L. c. 231, § 6H, inserted by St. 1983, c. 652, § 1.